UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JIMMY LEE JOHNSON, JR.,

    Defendant.

Criminal No. 18-99 (JDB)

---

## MEMORANUDM OPINION

Before the Court is [5] the government's motion for a protective order governing the disclosure and use of body-worn camera footage in this case. For the reasons that follow, the government's motion will be denied, and the parties will be directed to confer and submit a proposed order that is consistent with this Opinion.

## BACKGROUND

Defendant Jimmy Lee Johnson, Jr., was arrested in April 2018 and charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). See Indictment [ECF No. 1]; Arrest Warrant [ECF No. 2]. Video footage pertinent to Johnson's case, including footage of his arrest, was captured on at least one body-worn camera worn by an officer of the District of Columbia's Metropolitan Police Department. See Government's Mot. for Protective Order Governing Body Worn Camera Materials ("Gov't's Mot.") [ECF No 5.] at 3.[1] According to the government, the footage at issue here also depicts "the arrest of another related individual" and "numerous civilian witnesses unrelated to this investigation." Id. All told, the footage spans nearly twelve hours. See Tr. of Mot. Hr'g [ECF No. 12] at 16:21–25.

---

[1] The first page of the government's motion is labeled page 2; the second, page 3; and so forth. For clarity's sake, the Court will adopt the pagination used by the government in its motion.

Several weeks after Johnson's arrest, the government moved for a protective order relating to the body-worn camera footage. See Gov't's Mot. at 1; Proposed Protective Order Governing Discovery of Body Worn Camera Materials ("Proposed Order") [ECF No. 5-1]. Under the government's proposed order, all of the footage would be immediately turned over to Johnson's counsel, see Tr. of Mot. Hr'g at 6:6–16, but counsel's ability to use it and to disclose it to third parties would be restricted in various ways. For example, Johnson's counsel could use the footage only in the defense of Johnson's case—including any appeals or postconviction proceedings[2]— and not in any other litigation. See Proposed Order ¶ 1. Unless otherwise authorized by the Court, the footage could be shown only to Johnson and his "legal defense team"—that is, his counsel of record, that attorney's immediate supervisor, and any investigators, paralegals, or support staff members working on his case. Id. ¶¶ 2–3. Moreover, if Johnson's counsel were to show the footage to Johnson or any other court-authorized person, she would have to ensure that any footage containing certain categories of sensitive information—pertaining largely to witnesses—was redacted. See id. ¶ 5. The order would also impose limitations on copying the footage, see id. ¶ 6, and would require defense counsel to return or destroy all the footage produced if Johnson were ultimately acquitted or if the case against him were dismissed, see id. ¶ 9.

Johnson opposes the motion on several grounds. See Def.'s Opp'n at 5–10. Primarily, Johnson objects that the proposed protective order would "shift[] an enormous burden onto defense counsel" to identify and redact sensitive witness information before showing the footage to Johnson. Def.'s Opp'n at 9–10; see Tr. of Mot. Hr'g at 12:21–14:2. In Johnson's view, the

---

[2] Initially, Johnson objected to the protective order on grounds that it could be read to prevent him from using the footage in postconviction proceedings. See Opp'n to Government's Mot. for Protective Order ("Def.'s Opp'n") at 6. The government has since filed an amended proposed order clarifying that the footage may be so used. See Amended Proposed Protective Order Governing Discovery of Body Worn Camera Materials ("Am. Proposed Order") [ECF No. 10-1] ¶ 1.

2

government should be required to review and redact the footage before turning it over to the defense. See Tr. of Mot. Hr'g at 13:9–15. Johnson also argues that his counsel should be allowed: (1) to use the body-worn camera footage in connection with other cases—particularly those involving the same police officers—without first seeking the Court's permission, see Def.'s Opp'n at 5–6; (2) to show the footage to her colleagues in the Federal Public Defender's Office, see id. at 6; (3) to show the footage to potential witnesses without first seeking the Court's permission, see id. at 8; (4) to share witness information with Johnson absent a particularized justification for withholding that information, see id. at 8–9; and (5) to retain the body-worn camera footage in Johnson's case indefinitely, regardless of the outcome of his case, see id. at 10. The Court held a hearing on the government's motion on June 6, 2018, and the motion is now ripe for decision.

## DISCUSSION

Under the Federal Rules of Criminal Procedure, a court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" relating to discovery by entering a protective order. Fed. R. Crim. P. 16(d)(1). "The burden of showing 'good cause' is on the party seeking the order, and 'among the considerations to be taken into account by the court will be the safety of witnesses and others, a particular danger of perjury or witness intimidation, and the protection of information vital to national security.'" United States v. Cordova, 806 F.3d 1085, 1090 (D.C. Cir. 2015) (citations and alterations omitted). Ordinarily, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." United States v. Wecht, 484 F.3d 194, 211 (3d Cir. 2007) (citation omitted). But once a showing of good cause has been made, the court has relatively unconstrained discretion to fashion an appropriate protective order. See United States v. O'Keefe, No. 06-CR-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); Cordova, 806

3

F.3d at 1090 ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting Alderman v. United States, 394 U.S. 165, 185 (1969)).

Courts use protective orders not only to resolve individual discovery disputes, but also to "expedite the flow of discovery" in cases involving a large amount of sensitive information. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1123 (3d Cir. 1986); see United States v. Bulger, 283 F.R.D. 46, 52 (D. Mass. 2012) ("Protective orders vary in range and type 'from true blanket orders (everything is tentatively protected until otherwise ordered) to very narrow ones limiting access only to specific information after a specific finding of need.'" (citation omitted)). Although so-called "umbrella" protective orders still require "a threshold showing of good cause," United States v. Luchko, No. 06-CR-319, 2006 WL 3060985, at *5 (E.D. Pa. Oct. 27, 2006), some courts have found that such orders may be entered "without a particularized showing to support the claim for protection." Bulger, 283 F.R.D. at 52 (citation omitted). But even those courts require a particularized showing "wherever a claim under [the umbrella] order is challenged." Id.; see Luchko, 2006 WL 3060985, at *5 (noting that under a typical umbrella protective order, "after delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed not to be confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents" (citation omitted)).

I.  **THE GOVERNMENT'S PROPOSED PROTECTIVE ORDER IMPROPERLY SHIFTS THE BURDEN OF INSPECTING AND REDACTING FOOTAGE TO DEFENSE COUNSEL**

Johnson's chief objection to the government's proposed protective order is that it impermissibly shifts the burden of reviewing and redacting the body-worn camera footage from government counsel to defense counsel. Specifically, the government's proposed protective order —which impliedly contemplates the immediate production of unredacted body-worn camera

4

footage to the defense—would require Johnson's counsel to ensure that neither he nor any other court-authorized person views "any portion" of the footage that "includes information regarding" a witness's name, nickname, date of birth, social security number, driver's license or other identification number, address, phone number, email address, or certain family, financial, or medical information. See Am. Proposed Order ¶ 5. Johnson is correct that the government has failed to show good cause for this proposed method of producing the body-worn camera footage.

By default, Federal Rule of Criminal Procedure 16 contemplates a discovery process in which the government first reviews discovery materials before turning them over to the defendant for inspection. Discovery in a criminal case is triggered by a defendant's request.[3] Moreover, the part of Rule 16 that exempts certain other kinds of materials from discovery by the defendant— including "internal government documents made by an attorney for the government" in connection with the case and "statements made by prospective government witnesses" prior to trial—states that "this rule does not authorize the discovery or inspection of" such materials. Fed. R. Crim. P. 16(a)(2). Thus, the Rule contemplates that undiscoverable materials will not be produced in the first place—not that the government will turn over its entire case file for defense counsel then to review and redact before she may make use of it.

Of course, the parties are free to modify this default arrangement by agreement, assuming they can show good cause for their stipulated modifications. See, e.g., Bulger, 283 F.R.D. at 48 (blanket Rule 16(d) protective order entered into by consent); Luchko, 2006 WL 3060985, at *3 (noting that good cause is required "even where parties consent to a stipulated protective order"

---

[3] Rule 16 sets out the basic framework for conducting discovery in a criminal case. First, a defendant may request discovery of certain categories of information, including the defendant's oral and written statements, his prior criminal record, certain documents and tangible objects, test results, and written summaries of the government's expert testimony. See Fed. R. Crim. P. 16(a)(1). Then, if the defendant requests discovery of documents or objects, test results, or expert testimony, the government is entitled to reciprocal discovery of materials of that kind that the defendant intends to use at trial. See Fed. R. Crim. P. 16(b)(1).

5

(citation omitted)). Where the defendant objects to the government's proposed method of conducting discovery, however, the burden of showing good cause lies squarely on the government. See Cordova, 806 F.3d at 1090.

Here, the government has not made that showing with respect to its proposal that all unredacted body-worn camera footage be turned over to defense counsel, who must then review and redact the material before showing it to her client. For example, the government's motion emphasizes that body-worn camera footage generally tends to contain various forms of sensitive information, including witness names, addresses, contact information, and other family, financial, and medical information. See Gov't's Mot. at 4–5. The government also represents that the specific footage at issue in this case depicts the arrest of an unrelated individual as well as several witnesses "unrelated to the investigation." Id. at 3.

But these arguments miss the point. Johnson does not meaningfully dispute that body-worn camera footage will generally contain the categories of information identified by the government or that most of those categories are sensitive and ought to be withheld. Nor does Johnson have any basis to dispute the government's representation that the footage at issue in this case contains such information, since that footage has not yet been disclosed. Rather, Johnson argues—correctly—that the government has not explained why its attorneys are any less capable of reviewing the footage and redacting sensitive information than is Johnson's attorney. Indeed, it seems that the opposite is true: unlike defense counsel, a government attorney can confer with the officer who wore the body camera to determine whether the footage contains sensitive information and, if so, where that information appears. See Tr. of Mot. Hr'g 13:13–14:2. Johnson's counsel, conversely, would have to watch the footage at least twice: once by herself, to

determine whether it contained sensitive information, and again with Johnson (and any other court-authorized persons) to discuss its contents. Id. at 12:21–13:2; 47:3–8.

The government responds that although its proposed method of conducting discovery may burden the defense, it comes with a benefit: the defense gets access to much more material than it otherwise would, and much more quickly. See id. at 15:12–16:2 (stating, for example, that the government would waive its rights under the Jencks Act, 18 U.S.C. § 3500, to withhold statements made by prospective government witnesses until those witnesses testify at trial). But although the defense may have the footage in hand sooner under the government's proposed approach, defense counsel would then still have to review and redact that footage before she could use it—a process that would, presumably, take at least as much time for defense counsel to complete as it would take government counsel. And in any case, the trade-off proposed by the government is not one that Johnson is willing to accept. Without a particularized showing as to why defense counsel is better equipped to review and redact the footage than is government counsel, the Court declines to foist this bargain on Johnson and to rewrite Rule 16 in the process.

Instead, the Court expects that the government will work with the officers involved to identify the parts of the footage that it wishes to redact—and that it concludes that it has a legal basis to redact—prior to producing the footage to the defense. That information may include but is not necessarily limited to any statement by a prospective government witness,[4] any information that identifies any such witness,[5] and any information that is irrelevant, immaterial, or otherwise

---

[4] See 18 U.S.C. § 3500 (providing that "no statement or report in the possession of the United States which was made by a . . . prospective Government witness . . . shall be the subject of subp[o]ena, discovery, or inspection until said witness has testified on direct examination in the trial of the case"). Nothing in this opinion should be understood to relieve the government from any otherwise-applicable statutory or constitutional disclosure obligations. See, e.g., 18 U.S.C. § 3500(b)–(c) (providing for disclosure of certain witness statements after a witness has testified on direct examination at trial); Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972).

[5] See United States v. Jones, 612 F.2d 453, 455 (9th Cir. 1979) ("[Section 3500's] limitation has also been extended to prohibit the pretrial disclosure of the identity of government witnesses in the absence of a showing of

not subject to disclosure under Rule 16(a). If, during its review of the footage, the government discovers material that it does not have an independent legal basis to withhold but that it nonetheless wishes to withhold for a particularized safety, privacy, or other appropriate reason, it may move the Court to modify the protective order.

This allocation of the burden of reviewing the footage reflects an appropriate balancing of the safety, privacy, and efficiency concerns at stake. In general, the government will be in a better position to redact the footage appropriately because of its access to the police officers who wore the body cameras, so this approach is more efficient than requiring defense counsel to redact the footage before showing it to Johnson. Moreover, redacting the footage beforehand will give the government an opportunity to identify the parts of the footage that raise safety or privacy concerns and to exercise its preexisting legal rights to withhold those parts. And, if the government's review reveals parts of the footage that raise safety or privacy concerns but that the government has no independent legal basis to withhold, the government can present those particularized safety or privacy concerns to the Court in the form of a motion to modify the protective order.

Finally, this allocation of the burden reflects the default approach to criminal discovery contemplated by Rule 16, whereby it is the government's obligation—not defense counsel's—to review the information in the government's possession and to determine what information, if any, should be withheld. Given that the parties have not been able to reach an agreement on an appropriate method for handling the discovery of body-worn camera footage, the default approach prescribed by Congress is the proper one to follow here—particularly in the absence of any compelling reason to depart from that default approach offered by the government.

---

reasonable necessity by the defense."); <u>United States v. Hsin-Yung</u>, 97 F. Supp. 2d 24, 35 (D.D.C. 2000) ("A criminal defendant in a non-capital case . . . has no right to discover the identity of prospective Government witnesses.")

## II. OTHER ISSUES

Johnson raises a host of secondary objections to the government's proposed protective order. The Court addresses those objections in turn.

### A. Use of Footage in Other Cases

The government's proposed order would provide that body-worn camera footage "may be used by the defendant and the legal defense team solely in connection with the defense of this case, and any appeal or post-conviction litigation, and for no other purpose, and in connection with no other proceeding, without further order of this Court." Am. Proposed Order ¶ 1. Johnson objects to this, arguing that his counsel should be able to use the footage in connection with other cases—particularly those involving allegations of misconduct by the same police officers. Def.'s Opp'n at 5–6; Tr. of Mot. Hr'g at 25:1–23; see D.C. Mun. Regs. tit. 24, § 3900 (stating that one of the purposes of the District's body-worn camera program is "to promote accountability" in the District's police force).

Neither party disputes that body-worn camera footage is discoverable material, see Fed. R. Civ. P. 16(a)(1)(E) (authorizing discovery of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items"), and Rule 16 places no express limits on the purposes for which discoverable material can be used. Nor has the government made any showing that the footage here implicates "the safety of witnesses [or] others, a particular danger of perjury or witness intimidation, [or] the protection of information vital to national security"—the concerns that typically justify the entry of a protective order under Rule 16(d). See Cordova, 806 F.3d at 1090 (citations and alterations omitted). Instead, the government urges the Court to limit the use of the footage to Johnson's case because it is "uniquely sensitive"—essentially, because the footage by its nature contains a wealth of information that would not

9

ordinarily be captured by more traditional materials, like written police reports. See Tr. of Mot. Hr'g at 27:9–28:3 (arguing that the footage will "inevitably" depict "passerby" and "civilians" who "are not necessarily consenting to being captured on the body-worn camera video"); see also id. 28:19–21 ("Really what the government is saying is, this is a lot of information about what we're doing out there; we're not sure we want it all collected [and disseminated] like that.").

But the government does not explain why the sheer volume of information contained on body-worn camera footage—wholly apart from the sensitive nature of any of that information—justifies a prohibition on its use in cases other than Johnson's. Thus, given that the Court has already determined that the government may redact certain information from the footage before turning it over to the defense, the government has failed to carry its burden of demonstrating that the use of the body-worn camera footage should be limited to Johnson's case. Johnson's counsel—and, for the reasons discussed below, other attorneys at the Federal Public Defender's Office—may use the footage in other cases in which they act as counsel.

**B. Showing Footage to Colleagues in the Federal Public Defender's Office**

Next, Johnson challenges the proposed protective order's definition of Johnson's "legal defense team" to include only "defense counsel (defined as counsel of record in this case, including any subsequent post-trial or appellate counsel), the defense counsel's immediate supervisor, and investigators, paralegals, or support staff members, who are working under the direction of the defense counsel." Am. Proposed Order ¶ 2. Johnson's counsel represented at the hearing that this provision needlessly interferes with her ability to prepare Johnson's defense because it prevents her from discussing the case with colleagues in her office who are not assigned to it. See Tr. of

Hr'g at 34:8–13 ("[I]f we were a law firm, we would represent somebody; we're all entitled to the same information. There's no need to restrict us within our office. It's very burdensome.").[6]

The government's only argument in support of this provision is that attorneys from the Federal Public Defender's office have agreed to similar orders in other cases. See Gov't's Mot. at 10; Tr. of Mot. Hr'g at 35:1–12. But as the Court has already made clear, it is the government's burden to explain why a restriction on disclosure is necessary—not the defendant's burden to explain why other attorneys may have agreed to the restriction in other cases. Thus, given Johnson's counsel's representations regarding the burden of not being able to discuss the body-worn camera footage with her colleagues, and again in light of the fact that the Court expects the government to redact the footage appropriately before turning it over to Johnson's counsel, the Court concludes that the government has not shown that the limitation at issue here is warranted.

### C. Showing Footage to Johnson and to Third Parties

Johnson also challenges the provision of the protective order that prohibits his counsel from "disclos[ing] the [body-worn camera] materials or their contents directly or indirectly to any person, entity, or public forum, other than members of the legal defense team," except Johnson or any "other persons to whom this Court may authorize disclosure." See Am. Proposed Order ¶ 3. Given that the government may redact certain information from the footage before turning over the footage to defense counsel, and that the government may move the Court for a protective order to address any particularized safety or privacy concerns, the government has failed to show good cause for this prohibition as to Johnson. Nor has the government made any particularized showing that would justify requiring defense counsel to seek court approval before showing the footage to

---

[6] Johnson's counsel also represented that isolating the footage from other attorneys and staff at the Federal Public Defender's Office would pose technological difficulties. See Def.'s Opp'n at 6–7.

potential defense witnesses in the course of her investigation of Johnson's case. Thus, the Court concludes that defense counsel may show the body-worn camera footage to any person, without express authorization from the Court, where doing so reasonably can be expected to further the investigation of Mr. Johnson's case and the preparation of his defense.

But the government has represented that the footage at issue here depicts "at length" the arrest of a third person not related to Johnson's case, as well as footage of various civilian witnesses. See Gov't's Mot. at 3. The government also represents that, as a general matter, body-worn camera footage is likely to contain sensitive information in which witnesses and others depicted on the footage have a legitimate privacy interest. See id. at 4–5. Moreover, as the government points out, D.C. has adopted regulations governing the disclosure of body-camera footage to the public which, although they do not directly control here, represent a policy judgment that such materials tend to contain information that implicates privacy concerns. See D.C. Mun. Regs. tit. 24, § 3902.5(a) (providing that the subject of a body-worn camera recording may view (but not copy) that recording at a police station, so long as the viewing would neither "violate the individual privacy rights of any other subject" nor "jeopardize the safety of any other subject"); id. § 3902.5(b)–.6 (providing generally that a person who seeks a copy of a body-worn camera recording must file a Freedom of Information Act request). For these reasons, the Court concludes that the government has shown good cause for prohibiting Johnson from disclosing the footage to the public at large. Thus, to protect the privacy interests of the persons depicted on the footage, the Court will direct defense counsel not to disclose even the redacted footage to persons outside the Federal Public Defender's office who are unrelated either to Johnson's case or to some other judicial proceeding in which the Federal Public Defender's Office acts as counsel.

### D. Retaining Footage Following Dismissal or Acquittal

Finally, Johnson objects to the provision of the protective order that states that "[f]ollowing a dismissal or acquittal in this case, the defense attorney shall destroy, or return to the United States, all [body-worn camera] materials." Am. Proposed Order ¶ 9. The government justifies this provision by comparing it to provisions of protective orders that routinely require the return of medical and mental health information. See Tr. of Mot. Hr'g at 55:12–18. But the government does not explain why body-worn camera footage—particularly after the government has had the opportunity to redact it—raises privacy concerns of the same magnitude as medical and mental health information. Thus, the government has failed to carry its burden as to this restriction as well, and the Court concludes that defense counsel may retain the body-worn camera footage indefinitely if, in its judgment, it determines that to do so would be appropriate.[7]

### CONCLUSION

For the foregoing reasons, the government's motion for a protective order will be denied and the parties will be directed to draft a proposed protective order consistent with this opinion. Should the parties agree on a proposed protective order that differs in material respects from the specifications outlined above, the Court will consider the propriety of that order pursuant to Rule 16(d)'s good-cause standard. Otherwise, the parties should draft a new protective order pursuant to which: (1) the government redacts all information from the body-worn camera footage that it wishes to redact and that it thinks it is entitled to redact before turning the footage over to the defense; and (2) defense counsel may (a) use the footage in other cases, (b) show the footage to (or discuss its contents with) her colleagues at the Federal Public Defender's Office, (c) show the

---

[7] In place of this restriction, the parties should include in their revised proposed protective order a provision stating that the order will remain in force after the conclusion of Johnson's case. See Tr. of Mot. Hr'g at 54:14–20.

footage to (or discuss its contents with) any other person where doing so might reasonably be expected to further her preparation of Johnson's defense, and (d) retain the footage indefinitely; but (3) defense counsel may not show the footage (or discuss its contents) with persons unrelated to Johnson's case or to any other judicial proceeding in which the Federal Public Defender's Office acts as counsel. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 18, 2018